IN THE UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


MARILYN K. DRUMMOND                                              PLAINTIFF


V.                              CASE NO. 08-1007


MCSA, LLC, d/b/a MEDICAL
CENTER OF SOUTH ARKANSAS                                         DEFENDANT


**<u>MEMORANDUM OPINION</u>**

Before the Court is a Motion for Summary Judgment filed by Defendant MCSA, LLC, d/b/a

Medical Center of South Arkansas. (Doc. 7). Plaintiff Marilyn Drummond responded. (Doc. 13).

Defendant replied. (Doc. 18).The Court finds the matter ripe for consideration.


<u>BACKGROUND</u>

Ms. Drummond worked at the Medical Center of South Arkansas ("MCSA"), a hospital, in

the insurance verification and admissions departments from 1991 until her termination in May of

2007. Ms. Drummond was an admission clerk at the time of her termination. Ms. Drummond

received adequate ratings on her annual evaluations from 1991 to 2006. In 1992, Ms. Drummond's

overall evaluation was adequate, but the evaluator did note that Ms. Drummond makes careless

mistakes. In 1994, Ms. Drummond's overall evaluation rating was adequate or above, and the

evaluator noted that Ms. Drummond's accuracy was steadily improving but still needed work. In

1995, Ms. Drummond's overall evaluation was adequate and the evaluator noted that Ms.

Drummond had made a concerted effort to improve her accuracy. From 1998 through 2005, Ms.

Drummond received good overall evaluations including accuracy ratings that met or exceeded the

standard.    In 2006, Ms. Drummond's overall evaluation was adequate enough to merit a pay

increase, but the evaluator did note that Ms. Drummond's performance did not meet performance standards in ensuring accuracy and completeness of work performed, along with several other deficiencies. (Doc. 17-6).

In April 2006, Cindy Saulsbury became Ms. Drummond's supervisor in the insurance verification department, and it was Ms. Saulsbury who conducted Ms. Drummond's 2006 evaluation. Ms. Drummond and Ms. Saulsbury had personality conflicts before Ms. Saulsbury became Ms. Drummond's supervisor. On August 16, 2006, the business office director sent Ms. Drummond an email reprimanding her for failing to pre-certify two accounts. (Doc. 7-5). Ms. Drummond then underwent a verbal counseling session with Ms. Saulsbury and the admission's manager, Jeannie Hargett. During this session, Ms. Drummond was provided with an Employee Corrective Counseling Performance Improvement Plan ("Improvement Plan"). (Doc. 7-3). The Improvement Plan noted that Ms. Drummond's violations or deficiencies were: 1) "employee conduct;" 2) "failing to perform assigned duties in an appropriate manner or at assigned times;" and 3) "attending to personal affairs on facility time specifically personal phone calls." (Doc. 7-3). The Improvement Plan notes that Ms. Drummond refused to sign it. (Doc. 7-3). Ms. Drummond stated that she refused to sign the Improvement Plan because she was not making any more personal phone calls than her co-workers. MCSA claims that Ms. Drummond's deficiencies resulted in financial losses for the hospital. Ms. Drummond disputes this fact.[1]

In October 2006, Ms. Drummond requested to be transferred out of the insurance verification department so that she would no longer work under Ms. Saulsbury. (Doc. 7-2). This request was

---

[1] Where there are factual disputes, the Court bases its summary on accounts provided by plaintiff, the nonmoving party. *See Mettler v. Whitledge*, 165 F.3d 1197, 1200 (8th Cir. 1999).

2

granted, and Ms. Drummond was transferred into an admission clerk position. During October and November of 2006, Ms. Drummond received two emails from management regarding documentation requirements and instructions. (Doc. 7-6 & 7-7). In January of 2007, Ms. Drummond received another email reminding her that failure to comply with MCSA's established documenting process would result in disciplinary action. (Doc. 7-8). Finally, in February of 2007, Ms. Drummond received an email stating that she had failed to make notes concerning payment arrangements on some patient accounts.

MCSA's goal for accuracy rates in documentation was 96 percent at the time of Ms. Drummond's employment. In the six months prior to her termination, Ms. Drummond's recorded accuracy rates were as follows: 1) November 2006 - 89 percent; 2) December 2006 - 84 percent; 3) January 2007 - 88 percent; 4) February 2007 - 94 percent; 5) March 2007 - 86 percent; 6) April 2007 - 89 percent. The Medical Center of South Arkansas Admissions Department Policy and Procedure Manual ("Policy Manual") states that an accuracy rate of less than 96 percent is substandard. An accuracy rate of 90-96 percent during any given month will result in the following actions: 1) the first occurrence warrants a verbal warning; 2) the second occurrence warrants a written warning; 3) the third occurrence warrants a written warning and probation; and 4) the fourth occurrence warrants termination. (Doc. 7-11). An accuracy rate of less than 90 percent in any given month will result in the following actions: 1) the first occurrence warrants a written warning; 2) the second occurrence warrants a written warning and probation; and 3) the third occurrence warrants termination. The Policy Manual also defines a "Critical Offense" as a "deliberate or negligent omission, or falsification, of significant information on the employee application, time reports, facility records, or any other facility-related documents or reports." (Doc. 7-11). A Critical Offense is grounds for

immediate termination. (Doc. 7-11).

On April 1, 2007, Ms. Drummond requested leave from work, under the Family Medical Leave Act ("FMLA"), to take her husband to a doctor's appointment. Ms. Drummond's FMLA form was out of date and Ms. Drummond replaced it with a new form from her husband's physician. Ms. Drummond's supervisor questioned her regarding the date on the form. Ms. Drummond admitted to altering the date but explained she did so at the direction of her husband's physician. The physician later verified Ms. Drummond's explanation. Ms. Drummond was eventually granted the FMLA leave retroactively.

Ms. Drummond was terminated on May 29, 2007. The events on that day included the pre-admittance of Mrs. Wolfe for the delivery of her child. Ms. Drummond admits in her deposition that when she was pre-admitting Mrs. Wolfe she did not ask for or collect any money.  Ms. Drummond marked "FC" on the paper work that she filled out during this pre-admitting process. The "FC" refers to financial counseling. (Drummond Deposition, Doc. 7-2). According to Desi Harmon, MCSA's business office director, Ms. Drummond was trained and received more than one notice that noting "FC" on a patient's paperwork conveys that the patient was asked for money. Ms. Drummond put "$300" in the box with the "FC" which indicates that the patient was asked for $300. (Harmon Deposition, Doc. 17-2). Ms. Drummond does not contest these statements made by Ms. Harmon.

On the same day, when Ms. Drummond was asked by Ms. Hargett, the admissions manager, if she collected any money from Mrs. Wolfe, Ms. Drummond stated that she was sure she had. Ms. Drummond later realized that she had not collected any money from Mrs. Wolf and informed Ms. Hargett of this fact. Ms. Drummond explained that she did not collect any money because Mrs. Wolf had insurance that would cover 100 percent of the cost for her delivery. Ms. Drummond claims that

4

this was common practice with pre-admitting for deliveries. After Ms. Drummond's conversation with Ms. Hargett, she was called into a meeting with her supervisors and terminated. Ms. Drummond was told that falsifying documents was cause for automatic termination. (Drummond Deposition Doc. 7-2).

Plaintiff Marilyn Drummond has sued Defendant MCSA, LLC, alleging that she was wrongfully terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. sections 621-34, the Family and Medical Leave Act, 29 U.S.C. section 2615(a), and the Arkansas Civil Rights Act of 1993 ("ACRA"). Ms. Drummond's claims are based on the allegations that she was fired because she was the oldest employee in her department and because she was the only person in her department that exercised FMLA leave time. MCSA asserts that Ms. Drummond was terminated for poor performance, lying to supervisors by falsifying documents, and insubordination. MCSA argues there are no issues of material fact and moves the Court to grant its Motion for Summary Judgment. (Doc. 7).

<u>SUMMARY JUDGMENT STANDARD</u>

The standard of review for summary judgment is well established under Rule 56(c) of the Federal Rules of Civil Procedure. A summary judgment motion should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct 2505, 91 L.Ed. 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party giving her the benefit of all reasonable factual inferences. *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999).  The moving

party bears the burden of showing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party meets this burden, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on the issue. *Anderson*, 477 U.S. at 249. To avoid summary judgment the non-movant must go beyond the pleadings and come forward with specific facts, "by [his] own affidavit," or by "depositions, answers to interrogatories, and admissions on file," and designate specific facts showing there is genuine issue for trial.  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

DISCUSSION

*I. Age Discrimination Claim*

As an initial matter, the Court notes that the ACRA does not include age as a protected class. Ark. Civ. Code § 16-123-107. Therefore, Ms. Drummond's age discrimination claim under the ACRA must fail as a matter of law.

The ADEA prohibits an employer from terminating an employee based on the employee's age. 29 U.S.C. § 623(a)(1). Ms. Drummond has not produced any direct evidence that MCSA terminated her because of her age, so the Court must apply the *McDonnell Douglas* three part burden shifting framework for circumstantial evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff must first establish a prima facie case of age discrimination by showing that: 1) she was at least forty years old; 2) she was terminated; 3) she was meeting her employer's reasonable expectations at the time of her termination; and 4) she

6

was replaced by someone substantially younger. *Roeben v. BG Excelsior Ltd. Partnership,* 545 F.3d 639, 642 (8th Cir. 2008). Once the plaintiff establishes this prima facie case, the burden shifts to the employer to offer a legitimate nondiscriminatory reason for the termination. *Id.* If the employer is able to provide a legitimate nondiscriminatory reason, the burden then shifts back to the plaintiff to prove the employer's proffered reason was a pretext for discriminatory animus. *Id.* at 642-43.

The parties agree that factors one, two, and four of the prima facie case are met. MCSA, however, asserts that Ms. Drummond is unable to show the third prong—that she was meeting MCSA's reasonable expectations at the time of her termination. MCSA claims that Ms. Drummond's continued poor accuracy rates and her insubordination prove that she was not meeting MCSA's reasonable expectations. MCSA's Policy Manual outlines the expected accuracy rates for employees in Ms. Drummond's position. Ms. Drummond's rates consistently fell below the goal accuracy rates for the six months prior to her termination. Ms. Drummond admits her accuracy rates were below the required goal. Ms. Drummond's only response to MCSA's contention that she was not meeting its reasonable expectations is her assertion that MCSA did not follow its own procedures in terminating her. This argument is irrelevant to the reasonable expectation element of the prima facie case. The question is not whether MCSA followed its policies, but whether Ms. Drummond was meeting MCSA's reasonable expectations

The relevant inquiry is the employer or supervisor's perception and judgment regarding the employee's performance. *Brooks v. Ameren UE,* 345 F.3d 986, 988 (8th Cir. 2003); *see also McPheeters v. Black & Veatch Corp.,* 427 F.3d 1095, 1104 (8th Cir. 2005). The employee's own opinion about her performance is irrelevant. *Brooks,* 345 F.3d at 988. When assessing whether Ms. Drummond was meeting MCSA's reasonable expectations, the Court does not use the standard of

an ideal employee but instead what the employer could legitimately expect. *Keathley v. Ameritech Corp.,* 187 F.3d 915, 920 (8th Cir. 1999). The Court finds that MCSA could legitimately expect Ms. Drummond to meet the goal accuracy rate of 96 percent because according to her evaluations she had consistently met this goal in the past. Furthermore, the Court finds that Ms. Drummond clearly was not meeting MCSA's reasonable expectations as evidenced by the Improvement Plan meeting, and the emails instructing Ms. Drummond to be more accurate in her documentation. Even viewing the evidence in the light most favorable to Ms. Drummond, it is obvious from her accuracy ratings, the Improvement Plan, and the emails that Ms. Drummond was not performing to the reasonable expectations of MCSA in the six months prior to her termination.

Because Ms. Drummond cannot show that she was performing to the reasonable expectations of MCSA, she has not proven a prima facie case of age discrimination. It is, therefore, unnecessary for the Court to analyze the legitimate nondiscriminatory reason proffered by MCSAs in the age discrimination analysis.[2] For the reasons stated above, Ms. Drummond's ADEA claim must fail as a matter of law.

*II. FMLA Claim*

In order to prove a cause of action under the FMLA for retaliation, the plaintiff must first establish a prima facie case. *Smith v. Allen Health System, Inc.,* 302 F.3d 827, 832 (8th Cir. 2002). The plaintiff must show that: 1) she exercised rights afforded by the FMLA; 2) she suffered an adverse employment action; and 3) there was a causal connection between her exercise of rights and

---

[2] However, the Court does analyze MCSA's proffered legitimate nondiscriminatory reason for terminating Ms. Drummond in the FMLA analysis below and finds that Ms. Drummond cannot prove MCSA's legitimate nondiscriminatory reason is pretext for discrimination.

the adverse employment action. *Id.* (citing *Darby v. Bratch,* 287 F.3d 673, 678 (8th Cir. 2002)). However, this is only the beginning. The employer may then offer evidence of a legitimate nondiscriminatory reason for the adverse employment action. *Id.* at 833. If the employer shows a legitimate nondiscriminatory reason, the employee then must offer some evidence showing that the employer's proffered reason is pretextual. *Id.* (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999)).

Ms. Drummond claims that after exercising her FMLA leave she was harassed and intimidated by her supervisors when they accused her of falsifying her FMLA records. Ms. Drummond claims that the scrutiny placed on her continued and culminated in her being terminated for falsifying records. MCSA admits that Ms. Drummond can prove the first two prongs of the prima facie case, but assert that Ms. Drummond cannot prove the third prong of the prima facie requirement—a causal connection. MCSA supports this contention with the fact that Ms. Drummond's termination occurred two months after she exercised her FMLA leave, and that Ms. Drummond was terminated for the legitimate nondiscriminatory reasons of falsifying records and lying to her superiors.

The first issue that the Court must determine is whether Ms. Drummond has proven a prima facie case by showing a causal connection between her exercise of FMLA leave and her termination. Ms. Drummond has offered the following in support of a causal connection: 1) there was only two months between Ms. Drummond taking FMLA leave and being terminated, 2) she is the only employee with a sick husband that requires FMLA leave, and 3) she was questioned regarding an alteration on her FMLA form. The Court finds that Ms. Drummond's last two contentions do not support a causal connection. First, there is no evidence in the record to support Ms. Drummond's

9

contention that she is the only employee in her department who requires FMLA leave. Second, Ms. Drummond admitted she altered the date on her FMLA form and did not inform her supervisor of this alteration until she asked. (Drummond Deposition Doc. 7-2). Ms. Drummond was questioned regarding an alteration on her FMLA form because she altered her FMLA form. Once the physician verified that he gave Ms. Drummond permission to alter this date, the FMLA leave was granted retroactively.

As the Court has determined above that Ms. Drummond's second and third assertions regarding a causal connection are without merit, Ms. Drummond is left only with the temporal connection to show a causal connection. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1136 (8th Cir. 1999). However, as the Eighth Circuit has expressed, the issue of temporal proximity as the only evidence of a causal connection is a difficult issue. *Phillips v. Mathews*, 547 F.3d 905, 912, n. 4 (8th Cir. 2008). Because MCSA has proffered a legitimate nondiscriminatory reason for terminating Ms. Drummond and Ms. Drummond has presented weak assertions that this reason was a pretext for retaliation, the Court will assume, for the purpose of this opinion, that Ms. Drummond has met her burden of proving a prima facie case and move on to the analysis of MCSA's proffered legitimate nondiscriminatory reason for termination. *Id.*

MCSA states that it was Ms. Drummond's act of falsifying documents and lying to her supervisors that ultimately resulted in her termination. Ms. Drummond must now show the Court that MCSA's legitimate nondiscriminatory reason is pretext. *Smith,* 302 F.3d at 832. It takes more substantial evidence to prove pretext than it takes to form a prima facie case. *Phillips,* 547 F.3d at

912-13. Some accepted methods to show pretext are showing that: 1) the employer's reason has no basis in fact; 2) the employee received a favorable review shortly before he was terminated; 3) similarly situated employees who did not engage in the protected activity were treated more leniently; 4) the employer changed its explanation for why it fired the employee; or 5) the employer deviated from its policies. *Id.*

Ms. Drummond has not offered evidence showing any of these situations apply to her. MCSA's reason is based in fact. Ms. Drummond admitted in her deposition to the documentation she is accused of falsifying in Mrs. Wolf's paperwork. Ms. Drummond had not received a favorable review shortly before she was terminated. In fact the opposite is true as evidenced by Ms. Drummond's 2006 review and the reprimands she received the year prior to her termination. Ms. Drummond also made no offering of any other similarly situated employee who was treated more leniently. MCSA has not changed its explanation for why it fired Ms. Drummond. In Ms. Drummond's deposition, she stated that she was told on the day of her termination that she was being terminated for falsifying documents. While MCSA may have added insubordination and lying to supervisors as reasons for terminating Ms. Drummond, it did not change the original reason—falsifying documents. Lastly, MCSA's Policy Manual states that falsifying documents is a Critical Offense and cause for immediate termination. Therefore, MCSA did not deviate from their stated policy by immediately terminating Ms. Drummond. The Court finds that Ms. Drummond has not proven that MCSA's proffered legitimate nondiscriminatory reason for terminating her was pretext for retaliation for taking FMLA leave.[3] Ms. Drummond has failed to meet her burden of

---

[3] The Court notes that it will not consider Ms. Drummond's argument regarding the Employment Security Division's finding that MCSA's claim of falsifying documents is false. Ms. Drummond has offered no evidence in support of this assertion. The Court recognizes that

showing that MCSA's legitimate nondiscriminatory reason was pretext for retaliation for her taking FMLA leave.

<u>CONCLUSION</u>

Taking all the facts in the light most favorable to Ms. Drummond the Court finds, for the reasons stated above, that Ms. Drummond has not met her burden of proving a prima facie case for her age discrimination claim, and that Ms. Drummond has not met her burden of proving that MCSA's proffered  reason for terminating her was pretext for retaliation for taking leave under the FMLA. In addition, Ms. Drummond has failed to state a claim under the ACRA. Therefore, Ms. Drummond's claims must fail as a matter of law.

IT IS SO ORDERED, this 25th day of March, 2009.


  /s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge

---

Ms. Drummond attached to her Amended Statement of Facts the "Decision of Hearing Officer of the Arkansas Appeal Tribunal Appeal No. 2007-At-05471," which stated that the denial of claimant's unemployment benefits was reversed. (Doc. 17-1). However, the Court is given no indication of the reasoning of this reversal or the reason for denying the claim in the first place. There is nothing in the record to support Ms. Drummond's contention that the Employment Security Division found MCSA's proffered reason for terminating Ms. Drummond, falsifying documents, to be false.

12